UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-Civ-_____

CIV - RYSKAMP

MAGISTRATE JUDGE
VITUNAC

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

FRANKLIN W. BROOKS
AND JOHN L. GARDNER,

Defendants.

# COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

## SUMMARY

1. This complaint concerns several materially false and misleading corporate disclosures made or authorized by the senior management of Saf T Lok, Inc., a Florida-based corporation that manufactures and markets gun locks. At various times beginning in late 1997 and early 1998, Franklin W. Brooks, the Chairman of Saf T Lok, and John L. Gardner, then-Saf T Lok's President and CEO, caused the company to publish various press releases and to make periodic filings with the Commission that falsely described certain sales, consulting and development contracts to which Saf T Lok was a party. The false disclosures described agreements that would result in the sale of millions of dollars of Saf T Lok's products, or otherwise materially enhance Saf T Lok's business. In each instance, however, Brooks and/or Gardner knew, or were reckless in not knowing, that the agreements lacked substance and that



the descriptions of them in the press releases and Commission filings were materially false or misleading because they omitted material information. Additionally, Brooks and Gardner authorized Saf T Lok to pay for a research report that included materially false and misleading financial projections. Brooks and/or Gardner provided misleading information to the author, edited a draft of the report, represented that the report was consistent with the company's views, and then released the report for public distribution.

2. By knowingly or recklessly engaging in this conduct, Brooks, directly or indirectly, violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b)], and Rule 10b-5 [17 C.F.R. §§ 240.10b-5] thereunder.

3. By knowingly or recklessly engaging in this conduct, Gardner, directly or indirectly, violated Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5], and aided and abetted Saf T Lok's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)], and Rules 12b-20, 13a-11, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13] thereunder.

4. The Commission seeks a judgment permanently enjoining Defendants from future violations, and also seeks imposition of civil penalties.

## JURISDICTION

5. This Court has jurisdiction over this action pursuant to Sections 21 and 27 of the Exchange Act [15 U.S.C. §§ 78u, 78aa].

6. The Commission brings this action pursuant to authority conferred upon it by Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e)].

7.      Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, in connection with the acts, practices, and courses of business alleged herein.

8.      This Court has venue under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the Commission's claims occurred in this district.

## THE DEFENDANTS

9.      Franklin W. Brooks, age 66, is a resident of Jupiter, Florida.  Brooks invented Saf T Lok's gun locking devices, founded the company, and for all relevant periods served as its Chairman.

10.     John L. Gardner, age 64, is a resident of Orlando, Florida.  Gardner was President and Chief Executive Officer of Saf T Lok from April 1997 through June 1998.

11.     During the relevant period, Brooks and Gardner were primarily responsible for all major business decisions at Saf T Lok, including, among other things, reviewing drafts of all major press releases prior to dissemination.  Additionally, Gardner typically reviewed and signed Saf T Lok's filings with the Commission.

## ISSUER

12.     Saf T Lok, Inc., a Florida corporation headquartered in West Palm Beach, manufactures and markets locks that are designed to prevent the unauthorized or accidental discharge of guns on which they are installed.  Its common stock is registered with the Commission pursuant to Section 12(g) of the Exchange Act, and its shares trade on the Nasdaq SmallCap Market.  Saf T Lok reported 1999 revenues of approximately $210,000 and losses of $.28 per share, based on approximately 15.1 million shares outstanding.

## SAF T LOK'S FALSE OR MISLEADING DISCLOSURES

13.     In June of 1997, Nasdaq officials notified Saf T Lok that it faced delisting from the Nasdaq SmallCap Market because its total assets had fallen below $2 million. Desperate to raise capital, Saf T Lok began negotiating with an individual named Sholam Weiss, who claimed to represent various offshore entities that were interested in investing in the company through an offering of restricted stock pursuant to Regulation S of the Securities Act of 1933. To enable Saf T Lok to avoid delisting, Weiss agreed to an offering price of $2 per share. Saf T Lok thereafter issued $3 million worth of common stock at $2 per share (as well as stock purchase warrants) to the three alleged offshore investors represented by Weiss, and avoided delisting.

### A.     The A.B. & Associates Consulting Agreement

14.     As one condition to closing Saf T Lok's 1997 Regulation S offering at the $2 per share price, Weiss demanded that Saf T Lok enter into a contract with an entity called A.B. & Associates ("AB") and pay $250,000 for supposed business consulting services. AB was a shell entity created by a longtime acquaintance of Weiss. It listed a commercial mail box facility in Monsey, New York for an address, had no clients, and had never conducted any business, although its principal had experience in retail distribution. Gardner knew, or recklessly failed to know, that AB was a shell entity that would not provide any bona fide consulting services to Saf T Lok.

15.     Nevertheless, Saf T Lok entered into a contract (signed by Gardner) pursuant to which AB would provide generic "consulting" services to Saf T Lok including, among other things, analysis of unspecified investment opportunities and short-term and long-term investment policies, and advice with respect to public and private financings. Gardner did not attempt to

4

negotiate any of the provisions of the purported agreement, but simply accepted all the terms of a contract demanded by Weiss.

16. Saf T Lok disclosed this purported "financial and management consulting services agreement" with AB in a Form 8-K, which was executed by Gardner and filed with the Commission on November 14, 1997. The filing failed to disclose any of the material facts concerning AB, or that Saf T Lok would receive no services or anything else of value from AB in exchange for its $250,000 payment.

### B. The USA Distribution Agreement

17. Weiss also proposed to Brooks and Gardner that he would set up a distribution company that would sell Saf T Lok's products. Weiss had a new company, United Safety Action, Inc. ("USA"), incorporated for the stated purpose of distributing Saf T Lok's gun locks. USA had no assets, offices, or employees; its business address was the same commercial mail box facility in Monsey, New York used by AB. Weiss proposed to raise $10 million to finance USA's operations, with $7 million to purchase an inventory of Saf T Lok products for resale, and $3 million earmarked for related expenses. During negotiations of the USA agreement, however, Weiss indicated that he would be unable to raise the full $10 million, and instead proposed to raise $2 million to $3 million. In fact, USA eventually received total funding of only $150,000.

18. Despite USA's lack of financing and inability to perform, Saf T Lok entered into a distribution agreement with USA on February 12, 1998. Gardner signed the agreement, which provided that USA would purchase up to $20 million of gun locks over a three-year period. However, as a practical matter, the agreement only committed USA to purchase $1 million of locks. Specifically, the agreement provided that USA could terminate the contract after fulfilling an "initial order" of $7 million of gun locks. It also provided that any purchase orders Saf T Lok

received from "any customer" would count towards satisfying USA's "initial order" obligation. On February 11, 1998, one day before entering into the USA agreement, Saf T Lok had announced its receipt of a $6 million purchase order from a third-party wholesaler ("Wholesaler"), potentially leaving USA with a purchase obligation of only $1 million.

19. Saf T Lok, through Brooks and/or Gardner, published a series of materially false or misleading statements concerning the USA agreement in various press releases and Commission filings in 1998. A February 19, 1998 press release that announced the USA agreement included the false statement that USA "had secured $10 million in working capital" to start its business plan and advertising campaign. Additionally, the release falsely claimed that USA had an "obligation to purchase at least $20 million" of Saf T Lok products, and quoted Gardner as saying that the agreement was "guaranteeing $20 million in sales." Brooks and Gardner knew, or recklessly failed to know, that these statements were false or misleading. Brooks and Gardner reviewed a draft of the February 19 press release prior to dissemination, but neither corrected the press release nor prevented the release from being issued.

20. The following month, on March 13, 1998, Saf T Lok filed a Form 8-K, executed by Gardner, that discussed the terms of the USA distribution agreement, but failed to disclose that USA was not financially capable of performing its obligations.

21. On May 20, 1998, additionally, Saf T Lok filed a Form 10-Q for the first quarter ended March 31, 1998. That report, executed by Gardner, falsely described USA's minimum purchase obligations as "in addition" to the $6 million purchase order received from the Wholesaler. Further, the Form 10-Q added: "Based on the aforementioned, management believes it has adequate capital to fund operations for a reasonable period of time."

6

22. Finally, a May 21, 1998 press release falsely stated that the USA contract would provide a "minimum of $20 million in orders over a 24-month period." The release also attributed to Gardner the claim that, in light of the USA contract, "the Company will be profitable in the next quarter." Brooks and Gardner knew, or recklessly failed to know, that these statements were false or misleading. Brooks and Gardner reviewed a draft of the May 21 press release prior to dissemination, but neither corrected the release nor prevented it from being issued.

### C. The Fingerprint Recognition Development Contract

23. In spring of 1998, Saf T Lok considered entering into a contract with a laser technology company concerning the development of a fingerprint recognition system, mounted on a handgun, that would unlock the weapon only if the user's fingerprints matched the fingerprints pre-set in the system. The technology, if effectively applied to Saf T Lok's products, had the potential to revolutionize its gun locks. Brooks, however, did not want Saf T Lok to spend more than $20,000 to investigate the development of such a system. Saf T Lok entered into a contract with the laser technology company in May 1998.

24. On May 26, 1998, Saf T Lok announced the contract in a press release that failed to disclose material uncertainties about the technology or that Brooks did not want Saf T Lok to commit unlimited resources to finance the development of the proposed product. On the contrary, the release boasted that the fingerprint recognition system "will be available by the end of the year." Brooks reviewed and commented on the press release prior to dissemination. Despite his own unwillingness to have Saf T Lok finance the agreement, Brooks neither corrected the press release nor prevented it from being issued.

25. Approximately two weeks later, on June 11, 1998, Brooks voided the agreement and directed Saf T Lok to issue a press release announcing the termination of the contract.

### D. The Third-Party Research Report Paid for by Saf T Lok

26. In February 1998, Brooks and Gardner authorized Saf T Lok to pay $5,000 to an independent securities analyst ("Analyst") to prepare a research report for dissemination concerning Saf T Lok and its securities. Brooks and Gardner directed Saf T Lok to provide the Analyst with certain information about the company, including information concerning the purported USA distribution agreement, and later spoke with the Analyst about Saf T Lok and its products. The Analyst later provided a draft version of the report to Gardner, and had a conference call with Gardner to discuss possible revisions to the report. Later, Gardner and Brooks participated in a conference call with a brokerage firm, State Street Securities (now known as Taylor Stuart Financial), during which they discussed and affirmed the report. State Street Securities ultimately disseminated the report under its name.

27. The report, released on February 17, 1998, included false or misleading forecasts about the company's business prospects. For example, the report projected sales of two million units in 1998 and three million units in 1999, with net sales of $60 million in 1998, and $90 million the following year. The report further said that the stock price "could rise to $20-$40 per share over the next 12-24 month period." Gardner and Brooks reviewed the report before it was published, and knew that those projections were unreasonable and far exceeded the company's own projections. Nevertheless, neither Brooks nor Gardner directed Saf T Lok to issue any corrective disclosure or take any steps to halt distribution of the report until May 1998, three months after the report was made public.

## FIRST CLAIM

**Gardner violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. §§ 240.10b-5] thereunder, and aided and abetted Saf T Lok's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)], and Rules 12b-20 and 13a-11 [17 C.F.R. §§ 240.240.12b-20, 240.13a-11] thereunder**
**[Disclosure of AB Consulting Agreement in Form 8-K]**

28. Paragraphs 1 through 27 are realleged and incorporated herein by reference.

29. Saf T Lok's Form 8-K, filed November 14, 1997 and signed by Gardner, was materially false or misleading in that it disclosed the purported consulting agreement with AB, but failed to disclose any of the material facts concerning AB, or that Saf T Lok would receive no services or anything else of value from AB in exchange for its $250,000 payment.

30. By reason of the foregoing, Gardner violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5], and aided and abetted Saf T Lok's violations of the reporting provisions under Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)], and Rules 12b-20 and 13a-11 thereunder [17 C.F.R. §§ 240.240.12b-20, 240.13a-11].

## SECOND CLAIM

**Brooks and Gardner violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. §§ 240.10b-5] thereunder**
**[Disclosure of USA Distribution Agreement in Press Releases]**

31. Paragraphs 1 through 30 are realleged and incorporated herein by reference.

32. Brooks and Gardner issued two false and misleading press releases concerning Saf T Lok's purported distribution agreement with USA. A February 19, 1998 press release announcing the USA agreement included the false statement that USA "had secured $10 million in working capital" to start its business plan and advertising campaign. Additionally, the release falsely claimed that USA had an "obligation to purchase at least $20 million" of Saf T Lok

products, and quoted Gardner as saying that the agreement was "guaranteeing $20 million in sales." Three months later, a May 21, 1998 earnings announcement falsely stated that the USA contract would provide a "minimum of $20 million in orders over a 24-month period." The release also attributed to Gardner the claim that, in light of the USA contract, "the Company will be profitable in the next quarter."

33. By reason of the foregoing, Brooks and Gardner violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. §§ 240.10b-5] thereunder.

### THIRD CLAIM

**Gardner aided and abetted Saf T Lok's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)], and Rules 12b-20, 13a-11, and 13a-13 [17 C.F.R. §§ 240.240.12b-20, 240.13a-11, and 240.13a-13] thereunder**
**[Disclosure of USA Distribution Agreement in Form 8-K and Form 10-Q]**

34. Paragraphs 1 through 33 are realleged and incorporated herein by reference.

35. A Form 8-K filed by Saf T Lok on March 13, 1998, and signed by Gardner, discussed the terms of the USA distribution agreement, but was misleading in that it failed to disclose that USA was not financially capable of performing its obligations.

36. A Form 10-Q filed by Saf T Lok on May 20, 1998 for the first quarter ended March 31, 1998, and signed by Gardner, falsely described USA's minimum purchase obligations as "in addition" to the $6 million purchase order received from the Wholesaler. Further, the Form 10-Q added the baseless statement that "based on the aforementioned, management believes it has adequate capital to fund operations for a reasonable period of time."

37. By reason of the foregoing, Gardner violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5], and aided and abetted Saf T Lok's violations of the reporting provisions under Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)], and Rules 12b-20 and 13a-11 thereunder [17 C.F.R. §§ 240.240.12b-20,

240.13a-11].

## FOURTH CLAIM

**Brooks violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. §§ 240.10b-5] thereunder**
**[Disclosure of Laser Technology Contract in May 1998 Press Release]**

38. Paragraphs 1 through 37 are realleged and incorporated herein by reference.

39. Brooks issued a materially false and misleading press release on May 26, 1998 that announced the purported fingerprint development contract, and that described contractual provisions that Brooks knew that Saf T Lok would not accept.

40. By reason of the foregoing, Brooks violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. §§ 240.10b-5] thereunder.

## FIFTH CLAIM

**Brooks and Gardner violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. §§ 240.10b-5] thereunder**
**[Disclosures in Research Report Paid for by Saf T Lok]**

41. Paragraphs 1 through 40 are realleged and incorporated herein by reference.

42. Brooks and Gardner directed Saf T Lok to pay $5,000 to an outside analyst to prepare a research report that included false or misleading projections concerning Saf T Lok's business prospects. The report projected sales of two million units in 1998 and three million units in 1999, with net sales of $60 million in 1998, and $90 million the following year. The report further said that the stock price "could rise to $20-$40 per share over the next 12-24 month period." Brooks and Gardner provided information (including a copy of the purported USA contract) to the author, edited a draft of the report, represented that the report was consistent with the company's views, and then authorized release of the report for public distribution.

43. By reason of the foregoing, Brooks and Gardner violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

I.

Grant injunctions permanently restraining and enjoining Brooks and Gardner, and their officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with him, from violating Sections 10(b) and 13(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78m(a)], and Rules 10b-5, 12b-20, 13a-1, and 13a-13 [17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-1, and 240.13a-13] thereunder.

II.

Order Brooks and Gardner to pay civil penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

III.

Grant such other relief as the Court may deem just and appropriate.

Dated: December ___18___, 2000

Respectfully submitted,

_____
Thomas C. Newkirk (DC Bar No. 225748)
Erich T. Schwartz
Mark K. Braswell
Michael S. Fuchs

Attorneys for Plaintiff
Securities and Exchange Commission
450 Fifth Street, N.W.
Washington, D.C. 20549-0706
(202) 942-4813 (Fuchs)
fax: (202) 942-9639
NewkirkT@sec.gov

12

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I (a) PLAINTIFFS
U.S. Securities & Exchange Commission

### DEFENDANTS
Brooks, Franklin W.
Gardner, John L.

00-9110 CIV-RYSKAMP
MAGISTRATE JUDGE VITUNAC

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** Palm Beach County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

A-WPB 00cv9110 Ryskamp

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Erich T. Schwartz   (202) 942-4782
U.S. SEC 450 Fifth St., N.W., MS-0706
Washington, D.C. 20549-0706

**ATTORNEYS (IF KNOWN)**
Robert L. Ruben
Ruben & Aronson, LLP  (202) 965-3600
3299 K St., N.W., Washington, D.C. 20007

**(d) CIRCLE COUNTY WHERE ACTION AROSE:**
DADE, MONROE, BROWARD, (PALM BEACH), MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

[x] 1 U.S. Government Plaintiff
[ ] 2 U.S. Government Defendant
[ ] 3 Federal Question (U.S. Government Not a Party)
[ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION
15 U.S.C. Sections 78(j), (m), SEC alleges violations of the antifraud and reporting provisions of the federal securities laws.

IVa. N/A days estimated (for both sides) to try entire case.

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

**A CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
B ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans)
B ☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

**A TORTS — PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury—Med Malpractice
☐ 365 Personal Injury—Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
B ☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**B FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**A LABOR**
☐ 710 Fair Labor Standards Act
B ☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
B ☐ 791 Empl Ret Inc Security Act

**A BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**A PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**B SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**A FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**A OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
B ☐ 450 Commerce/ICC Rates/etc
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
[x] 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
* ☐ 890 Other Statutory Actions  *A or B

**A REAL PROPERTY**
☐ 210 Land Condemnation
B ☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**A CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

**B PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
   Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
*A or B

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)
[x] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Refiled
[ ] 5 Transferred from another district (specify)
[ ] 6 Multidistrict Litigation
[ ] 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23
**DEMAND $** Permanent Injunctions
**JURY DEMAND:** ☐ YES [x] NO
Check YES only if demanded in complaint:

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE 12/19/00
SIGNATURE OF ATTORNEY OF RECORD: Thomas C. Newkirk  TN7271

UNITED STATES DISTRICT COURT
S/F I-2
REV. 6/90

FOR OFFICE USE ONLY: Receipt No. _____  Amount: _____
Date Paid: _____  M/ifp: _____